Good morning. Ryan Moore on behalf of the appellant, Kevin Martin, and I will reserve two minutes for rebuttal. I'd like to first focus on the court's decision not to hold an evidentiary hearing on the potential Brady-Napoo violations, and then comment on procedural error at sentencing. The turning point in this trial was when the prosecutor told Martin's attorney that the key government witness claimed that Martin had contacted her and told her to plead the Fifth. The problem was, as the prosecutor would learn the next day, that claim may have been a misleading half-truth. When the full-text message that Martin ---- Was that statement made to ---- in front of the jury? That statement was not. Yes. But the prosecutor later raised the issue, and I'll come to that. The problem was, when that text message was actually produced, it strongly suggested that the witness had contacted Martin first, that the witness was concerned about incriminating herself, and that Martin was only responding to those concerns. So the prosecutor then did two things wrong. The first is that she implied to the jury that Martin had tried to influence the witness's testimony. Now, at the time she asked that question, it wasn't necessarily an improper question. But the next day, when that text message surfaces and tells her exactly what Martin texted to the witness, and that strongly suggested otherwise, that Martin had not attempted to influence her, it triggered a duty on the part of the government to further investigate. It triggered a duty to investigate whether the inference it had propounded was false. But wasn't all of that within the knowledge of Mr. Martin? Mr. Martin had a cell phone, presumably, that his attorney could have looked at. This Court has held twice, in Northern Marianas v. Bowie and in U.S. v. LePage, that when we're talking about a potential NAPU violation, that doesn't matter. The Court rejected the government's argument in both of those cases. In those cases, the defendant knew about the potential falsity, and in one, crossed on it thoroughly, and the other crossed on it ineffectively. But what false evidence was presented to the jury? The prosecutor's question at the – her closing questions of her direct examination of the witness was when she implied that Martin had tried to influence the testimony. When she asked the witness. The question was, did he contact you earlier today? Answer, yes. Then there was an objection overruled. The Court said, what was the answer? Question, did he contact you earlier today? Answer, no. So you have inconsistent answers in what seems to be a rather ambiguous question. The witness equivocates, but the key – the chief problem here is the question. Did he contact you earlier today? Yes. The jurors are hearing that the government believes that Martin has contacted her. Now, there's no other reason to ask the question unless you're implying that he's tried to influence her testimony. And when she says yes, that's enough for the jury to then believe that that was true. Additionally, the way it plays out makes it look like after the objection by counsel, the judges that are involved, and then she gives her no answer to that same question, makes it look like to the jury that she's changing her answer because she's afraid of – But the thrust of what you're saying, counsel, is that this put the defendant in an awkward position, and I'm still not quite understanding why it wasn't plainly within his power at that point for the judge – I mean, for the counsel and Martin to look at and know how that exchange of text messages or emails or whatever they were came about and to approach the court, ask for a mistrial, do something right at that point. This isn't something that got pulled out of their files. It came off his cell phone. I mean, it was the other end of the conversation, which was in his hands. So the investigation – I was trying to figure out, reading your argument a couple times now – the investigation would have required the government to demand access to your client's cell phone. Isn't that correct? I don't believe so, Your Honor. And there were a couple of different questions in there I'd like to address, but I don't believe it required access to a cell phone. I believe what the investigation required would have been, presumably, the FBI confiscated the witness's phone because it had this evidence against the defendant on it in the government's eyes, would have been looking at that phone, potentially turning it over to an expert within the FBI, asking Conrad, the witness herself what was on it, asking the FBI what the FBI did with the phone, what the FBI knew. Well, when the defense attorney looked at the phone and submitted the supplemental briefing and I looked at the text and there wasn't anything that corresponded with what was speculated to have triggered her response. So how do – what do we make of the fact that, in fact, there wasn't anything or at least the defense attorney didn't share anything that corroborated that speculation? That's true. The defense attorney did not submit – the government didn't submit either any of the original text which prompted that response. But Martin had a right to plan his trial strategy based on evidence from the government at that point. And it wasn't his responsibility to come forward with that evidence when there was a suggestion that there was a potential falsity here. Additionally, during trial, Martin was really stuck because even – let's assume that he had on his phone the most favorable response – text from this witness to Martin. He couldn't effectively deal with that, with the implication if, for example, he testified and was impeached with this, because that evidence would be viewed as self-serving. It would be viewed with chain of custody problems. And it would essentially have been his word against the witnesses, unless he had evidence from the government, evidence from the witness's phone, Conrad's phone, that the FBI says was – they couldn't obtain more information from because it was difficult to navigate. But, counsel, Mr. Martin's counsel knew all of this and could have gone to the court and requested all of that. In other words, if he just asked Mr. Martin, show me your phone, show me the back and forth, and I'm going to need some help here, Judge. You know, I need something so that when my client testifies that there's an impeachment, I'm not going to have any of these problems. But none of that ever happened. And I have to say I'm very confused because in the sentencing transcript, Mr. Knight says that just before I filed the renewed motion for new trial, I had him, being Mr. Martin, bring in the phone, and we went through it, and we made exact, in fact, I still have possession of the phone. So it looks like it wasn't until after the trial and after the first motion for a new trial that Mr. Knight even made any effort to find out what was on the phone. I don't know when the attorney made the effort. It's true. Well, he says when he made the effort. Yes. And he said that later at sentencing and no messages were produced. The attorney could have objected in trial at the time and said, we need an evidentiary hearing right now to clear this up so my client can make a decision whether to testify in a fair environment. And he didn't do that. But we're not asking the Court to review the substantive NAPU Brady claim. We're asking the Court to review the decision, the district court's decision, not to grant an evidentiary hearing. Okay. I think we have that point. Do you want to save time, or did you want to get through? Your Honor, I'll reserve the remainder. Thank you. Okay. May it please the Court, my name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. The defendant is raising, of course, this Brady-slash-hearing question as well as several other sentencing issues. But I think that the Court needs to bear in mind that none of these were presented in an appropriate fashion to the district court, and so review for all of them is for plain error. And if we look at it, what we find is no error whatever, much less that kind of egregious error that's considered to be plain. Now, with regard to the Brady hearing issue, the case law that I put in my brief points out that it's within discretion of the district court to decide whether an evidentiary hearing is necessary. And obviously there's no hearing necessary when the factual allegations that are made and the facts known to the district court show that there simply isn't a valid claim there, which is the case here. This is not a Brady situation at all, because Brady requires the suppression of evidence by the government, and that didn't happen. Rather, before this witness ever got on the stand, the prosecutor went to the defense counsel, Mr. Knipe, and said, I've been told by this young lady that she got this message from your defendant, and I wanted you to know about it before she ever gets on the stand. So he was well aware before she began to testify. Then, when she came on, testified that afternoon, we have this ambiguous exchange of, did he or did he not contact you? The final word to the jury being, no, he did not contact me. Thus, there's nothing which reflects badly on the defendant, only on the witness's ability to understand and answer the questions. Now, at this point, the defense counsel knows exactly what's going on. He has access to that phone and does nothing. He did not cross-examine her about it. And also it's important to recognize that at the end of her testimony, the district court's judge kept her, did not release her entirely, but kept her available until the end of the trial in the event the defense thought they might need her for something else. Next day, in the morning, prosecutor comes to the judge and says, Judge, I think you have to know about this issue. After that testimony yesterday, the FBI agent was talking to the young lady when they went home, got her cell phone, actually found this message from the defendant saying, hey, why don't you plead to Fifth Amendment and not testify, and brought in a photocopy of the face of the phone showing that that's exactly what happened. So in fact, the government did pursue the issue and did bring it again to the attention of the defense and of the court. And the judge admonished the defendant against doing that and basically said, that's all that we're going to do at this point. It was never discussed in closing argument. It was never reiterated. The government did not try and draw any inference from that ambiguous exchange. Well, why did the prosecutor ask the question in the first instance? Do you know whether there was any contact between you and the defendant? I mean, there's a yes or a no answer. If the answer was yes, was she going to go on and ask what was the contact? Do you have any idea? I don't know. I suspect that being as concerned as she obviously was about what was going on here, she wanted to make full disclosure. If there had been some kind of exchange that was inappropriate and, you know, that was impeaching of this witness, the jury had a right to know about that. Well, it's normally the sort of thing you go to a judge beforehand and ask. In retrospect, that might have been a better tactic. But certainly what we see is not a prosecutor trying to hide the ball. Rather, she's trying to make sure that everybody who's impacted by it knows about it. Secondly, so there's no – nothing hidden here. It is certainly within the ability of the defense to investigate this to the extent that they have possession of the defendant's own phone. And then what would we find? An absolute – not even a scintilla of prejudice that can be shown because, in fact, there was nothing to elicit this statement. The defense had the phone, brought out the messages that apparently they – that could be accessed from Mr. Martin's end.  And the defendant's own making in saying that, regardless of what confused Ms. Martin – excuse me, Christie might have said to him, bottom line is, he advised her not to testify but to take the fifth. That's wrong. Well, I – that may be a little strong. It sounded like he said, I suppose you could take the fifth. It was a suggestion as – in any event, I don't want to – we don't want to make it sound like it was more aggressive than it may have been. Appropriately noted. All right. I think we have that issue pretty well in mind. Is there anything else you wanted to address? Just that if there was a conundrum for the defendant, it was of his own making. Yeah. Now, with regard to the sentencing issues, again, it's plain error. His reading of the district court's supposed confusion about what the top of the guidelines simply is not supported by the record. And in any event, unlike the Dorovey case that he relies upon from the Second Circuit, this court here didn't say, I want to reduce in proportion to what the advisory guideline range is. Rather, it said, I'm going to vary down basically five years below the max, and I'm going to give you 15. It didn't attempt to relate it to whatever the ceiling of the advisory guideline range was. So this is not at all like Dorovey or anything else. And, again, with regard to the overall reasonableness, although the district court had the discretion to choose on policy grounds not to go with those guideline enhancements, the Henderson and Apodaca cases also make clear they had the discretion to agree with them, to say, in this case, it looks to me like it's appropriate. And that's essentially what the district court judge did. So we have a reasonable sentence arrived at by an appropriate exercise of the district court's discretion. If you have any questions, I'd be glad to answer them. No? I think we're fine. Thank you. Thank you. The prejudice in this case for the failure to investigate was that the witness tampering allegation torpedoes a case. It's evidence of consciousness of guilt. It's devastating. It also interfered with the defendant's right to testify. Even though the defense attorney did not object at the time and ask for an evidentiary hearing and the court wants to review that for plain error, there was plain error here. The court had the text. The court heard the testimony. And the case law requiring the government to investigate when it has a reason to believe that something may be the jury may be getting false information was well settled at that point. As to guideline calculations, 30 seconds. The record is clear that the guideline range that the district court stated and found was wrong. As this court has held, when the guideline range is different, the extent of a variance necessarily is different. And what that means for us is that where a court believes that the guidelines are recommending a sentence that extends two years higher, even above the statutory maximum, if it believes that the commission and the guidelines recommend that higher sentence, it is not going to vary downward as far. Okay. Thank you. Thank you. Thank you, counsel. We appreciate the arguments as always. And the case is submitted.
judges: Seabright, Fisher, Ikuta